GOLDSBY v. JOHNSON *et al., Appellants.*

**The Decree** of the lower court setting aside a conveyance of land as being in fraud of creditors, affirmed.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*L. H. Waters* and *J. C. Crawley & Son* for appellants.

The court erred in permitting Willis H. Johnson's deposition to be read against appellants while the witness was

then present in the room. R. S. 1879, § 2157. The court erred in. permitting a part of Willis H. Johnson's deposition to be read; plaintiff should have read the whole of it. *Hill v. Sturgeon*, 28 Mo. 323; *Kritzer v. Smith*, 21 Mo. 296. The decree of the court was not supported by the evidence.. A court of equity, except in a case where the evidence is clear and conclusive, should not take from one man a large and valuable estate, as in this case, worth $4,000, and bestow it upon a stranger who purchased for $28. *South v. Oliver*, 40 Ill. 245; *Elliott v. Stoddard*, 98 Mass. 145; *Shoulz v. Brown*, 27 Pa. St. 123. When a suit to set aside a conveyance, as in this case, is brought by a subsequent creditor, fraud in fact must be clearly proven. As long as a creditor does not contemplate defrauding any one, he may dispose of his property as he sees fit. *Payne v. Stanton*, 59 Mo. 159; *Pepper v. Carter*, 11 Mo. 540; *Salmon v. Barnett*, 1 Am. Lead. Cases 49; *Read v. Livingston*, B. John. Ch. 501; 2 Story's Eq., §§ 355, 366; *Vogler v. Montgomery*, 54 Mo. 577. At the time the deed was made, Willis H. Johnson owed his father $2,700. After it was recorded the father paid the county mortgage for $440.75, Hill's debt of $600, Jackson's debt of $300, and the debt due Redman's. estate of $190. He paid everything but the Munson debt, of which he heard for the first time after plaintiff had bought the land for $28. The court below should have. offered him an opportunity to redeem.

*S. P. Huston* and *A. W. Mullins* for respondent.

Willis H. Johnson made no answer, and the fraud on his part, therefore, stands admitted. *Shend v. Henley*, 71 N. Y. 320. His failure to testify as a witness raises against. him a strong presumption of fraud. Bump on Fraud. Con., (3 Ed.) 54; *Baldwin v. Whitcomb*, 71 Mo. 685; *Henderson v. Henderson*, 55 Mo. 559. A conveyance from son to father when the son is indebted, calls for strict proof of good faith and the payment of the purchase price. *Glen v. Glen*,

17 Ia. 498; 94 U. S. 580; *Stevens v. Dillman,* 86 Ill. 233. The omission to place the deed of record or leaving it in the hands of the grantor, to be produced or suppressed, as exigencies may require, is a fraud. Bump on Fraud. Con., (3 Ed.); *Coates v. Gulach,* 44 Pa. 43; *Hood v. Brown,* 2 Ohio 267; *Everleigh v. Penford,* 2 Wood & Rob. 539; *Brown v. McDonald,* 1 Hill Ch. 297. After this pretended sale the vendor remained in possession of the land as W. O. Johnson himself says: " My son lived on and occupied and used the land after he conveyed it to me just as he had before." This rendered the pretended sale fraudulent. Bump on Fraud. Con., (3 Ed.) 49; *King v. Moon,* 42 Mo. 551. During this time he mortgaged to Chariton county. *McIntosh v. Bathune,* 8 Ired. 139; *Swift v. Lee,* 65 Ill. 336. The motion for a new trial does not assign error in admitting or rejecting evidence; hence, that could not be assigned here. But even if it could the action of the lower court is clearly sustainable on authority. *Morris v. Brunswick,* 73 Mo. 256.

NORTON, J.—The petition in this case was filed in September, 1880, and charges in substance that on the 27th day of October, 1877, defendant, Willis Johnson, became indebted to Anna Munson, administratrix of the estate of Wm. Munson, deceased, in the sum of $302.90; that Willis was then occupying the land and credit given to him on account of such apparent ownership; that, after the creation of this debt on the 10th day of January, 1878, a deed from Willis H. Johnson to his father, Wm. O. Johnson, purporting to convey this land, was filed for record, which deed was dated March 6th, 1876; that it was secretly and collusively made by an arrangement between father and son to defraud existing and future creditors of said Willis H. Johnson; that after the pretended making of the deed from son to father, the former mortgaged the land to Chariton county, representing it to be his own with the knowledge of the father. This mortgage is dated March 30th,

1876. The petition then alleges that suit was brought on the Munson note; an attachment issued in aid of it upon the ground that defendant, Willis H. Johnson, had fraudulently conveyed and assigned his property and effects, and had concealed, removed and disposed of his property and effects so as to hinder and delay his creditors; that personal service was had and judgment rendered thereon in the name of William Bitter, administrator *de bonis non*; the land levied upon and sold as the property of Willis H. Johnson, and purchased by plaintiff and deed made to him. The prayer of the petition is, that said deed from Willis Johnson to William O. Johnson be set aside.

Defendant, Willis Johnson, did not answer, but made default. William O. Johnson filed his answer denying the material allegations of the petition.

Upon the trial of the cause judgment was rendered by the court for plaintiff in accordance with the prayer of his petition, from which the defendant has appealed, and assigns as reason for the reversal of the judgment that the finding is against the evidence.

As to defendant, Willis H. Johnson, the fraudulent purpose for which the deed in controversy from him to his father was made, stands confessed, and if the father, William O. Johnson, had knowledge of this purpose, and accepted the deed with such knowledge, it is void as to creditors, even though he may have paid a consideration for the property conveyed; and the fact that Willis H. Johnson, the grantor and son, was present in court, when the cause was tried, as the record before us shows, and was not called by him to testify, under the ruling of this court in the case of *Baldwin v. Whitcomb*, 71 Mo. 651, raises a presumption in favor of the charge of fraud. The presumption thus raised is abundantly fortified by the evidence in the case, and passes from a mere presumption to a fact proved.

The evidence shows that, although the controverted deed from the son to the father was dated and acknowledged on the 6th of March, 1876, that it was not filed for record till

the 10th of January, 1878; that in the meantime the son, according to the evidence of the father, lived on and occupied the land as he had before, and according to the evidence of Mr. Doxey, defendant, William O. Johnson, told him in May, 1877, more than a year after the date of the deed, that the land belonged to Willis, his son. In addition to this, the evidence shows that the debt which culminated in the judgment under which the land was sold to plaintiff, was contracted in October, 1877, with Anna Munson, administratrix, and concerning which Mr. Slyster testified as follows: " I live adjoining this land, have lived there for years; was acting as the agent of Mrs. Munson at the time Willis Johnson bought the stock. Willis always claimed the land and used it as his own. I would not have delivered the property if I had not believed he owned the farm; his father was there frequently in 1878, spoke of the farm as Willis' farm ; told me the farm was his; had a conversation with Wm. O. Johnson one year ago, in which he said he did not get the deed from his son till 1878."

McCalvin testified: " Was at Willis' frequently while he lived on the land; he always claimed the land ; he built a large barn on it and a new dwelling house in 1877 and 1878. I saw his father then frequently in 1878. He spoke of the farm as Willis' farm. Willis was considerably in debt in 1878; he left the farm in 1878."

It seems to be an established principle that " a deed not at first fraudulent may become so by long being concealed, because by its concealment persons may be induced to give credit to the grantor. In such a case the use that is made of it relates back, and shows the intent with which it was made. The omission to place a deed on record, or leaving it in the hands of the grantor, or placing it in the hands of a third person to be produced or suppressed as exigencies may demand, are instances of secrecy that are within the rule." Bump on Fraud. Con., p. 82. Applying the principle here announced to the facts disclosed by the evidence, the trial court was justified in the judgment rendered by

it; for it abundantly appears that, if in fact the deed in controversy was executed in March, 1870, it was not only not put on record till January, 1878, after the debt to Mrs. Munson was created, but that in the meantime the grantor remained in possession as before, claiming the land as his own, obtaining credit on the strength of his claim, which claim was not only known to the grantee, but the validity of the claim recognized by the grantee in repeated declarations that the land was in fact the land of his son, the grantor.

The evidence of defendant, William O. Johnson, who was examined as a witness in his own behalf, is contradictory and inconsistent with itself, and wholly fails to relieve the transaction of the imputation of fraud. It is as follows: "I am father of W. H. Johnson; I own the farm Willis moved on to in February, 1873; with four horses raised a big crop of wheat in 1873 and 1874; I furnished the capital, and were to divide the profits. In 1873 he raised 2,600 bushels of wheat, and in 1874 raised about 2,700 bushels; I sent him large sums of money; don't now recollect how much; we were partners in the stock busi. ness in 1873; he had ninety mules on the farm on our account; on the 15th day of September, 1874, I sold the farm to him for $4,000; I made deed to him of that date, at that time; I had received money for the two crops of wheat; he had fed out what he raised on the farm to our stock; we had had no settlement; I suppose he had about paid me for the land; in March, 1876, he brought mules to Mexico for sale; I sold them for him; he asked me for money; I told him he was owing me and I should keep it; he said if I would pay him the money and allow him $1,000 for the barn and house built on the land, he would deed me the land back; I agreed to it; he executed the deed to me March 6th, 1876, and acknowledged it on that day before recorder of Audrain county for the expressed consideration of $5,000; his wife was not there to sign the deed; Willis told me he had not recorded his deed, and for this reason,

and because his wife had not signed the deed, I did not have it recorded; I was waiting to get his wife to sign the deed; I rented him the farm at $350 a year; about 1st of January, 1878, I was up in Chariton county, learned my son had had his deed recorded and borrowed money from the county and given a mortgage on the land, and had given chattel mortgage on his personal property; I went home, got my deed, had my attorney to make out attachment papers against him, came immediately back, had a settlement with him, found he owed me $2,700, and I had my deed put on record as soon as I could get it after I found what he had done; I paid the county debt, also a debt of $600 to Hill, $300 to Jackson, $190 to Redmon's estate; these debts were notes he had sent to me and I had signed as security, except the county debt; I never refused to indorse my son's notes, when requested, and would have indorsed the Munson note if it had been sent to me, but it was not; I knew nothing of the Munson debt until after judgment and the sale of the land; I have paid all of Willis' debts that I know of, except the Munson debt; Doxey and I owned 160 acres timber land jointly; was not divided till 1879; after the division Doxey wanted pay for timber cut off his part; I told him Willis cut the timber; the timber was cut before Willis deeded the land to me, and I told Doxey Willis would have to pay him for the timber; I had a conversation with Slyster; did not tell him deed was antedated."

*Cross-examined:* "I never paid anything to my son for his deed to me; he had not paid anything to me for this land; he gave me his notes; we just settled up and he conveyed the land to me; I did not know that he was involved in debt; I did not give in any notes given me by my son, for assessment in the tax list; do not know whether I took any notes from my son or not; I did not have any notes against my son, and did not deliver any notes to him when he conveyed the land to me; no money was paid; we settled and I took the land for what he owed me on ac-

count; I kept a book account; do not know how much I credited him with in 1877 and 1878; occupied the land as my tenant; paid me rent; we had a written lease; don't know what became of the lease; it was written by me and signed by Willis. In 1878 I learned that Willis was largely in debt; I did not tell Mr. Slyster that the land belonged to my son, nor did I tell him I did not get my deed from Willis till 1878.; I do not know whether I was insolvent or not, when I conveyed the land to my son; my son lived on and occupied and used the land after he conveyed to me, just as he had before; I was not insolvent in 1876, 1877 and 1878; I had given a deed of trust on my property for $11,000 ; the conversation referred to by Mr. Doxey was in 1876, before I got the deed from my son.

It will be seen that defendant swears in his examination in chief that in consideration of his son's conveying him the land he was to pay him the money received from the sale of mules, and allow him $1,000 for a barn then built, which, according to other evidence in the case, was not built till a year afterwards. On his cross-examination he swears that he never paid his son anything for the deed. He swears in his examination in chief that he had received the proceeds of 5,300 bushels of wheat raised in 1873 and 1874 by his son on the land, and made a deed to his son for the land in 1874, he having about paid for it; in his cross-examination he swears that his son never paid him anything for the land, but gave his notes; that he never delivered any notes to his son when the deed was made; "did not know whether he took any notes, no money was paid; we settled and I took the land for what he owed me on account." These conflicting statements cannot be reconciled. Besides this, he is contradicted in important particulars by three disinterested witnesses, and it was, also, shown by several witnesses that his character for truth was bad.

We perceive nothing in the record which would justify an interference with the judgment, and it is hereby affirmed; in which all concur.