WILSON, *Plaintiff in Error*, v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY *et al.*

DIVISION ONE.

1. **Corporation**: EXECUTION AGAINST NON-RESIDENT STOCKHOLDER: NOTICE: STATUTE. Sufficient notice required by Revised Statutes, 1879, section 736, to a person sought to be charged on execution as a stockholder of an insolvent corporation must be a personal notice served within this state.

2. ———: ———: ———: ———. Such notice served outside of this state is a nullity, and this would be the case even if expressly authorized by the statute.

3. **Practice**: SERVICE BY PUBLICATION ONLY, EFFECT OF. Service of process, by publication of notice only, will give effect to a proceeding only so far as it is one *in rem*.

4. **Corporation**: JUDGMENT: STOCKHOLDER. A stockholder is not a party to a judgment against the corporation, and such judgment will not bind his individual property.

5. **Evidence**: FAILURE TO TESTIFY: PRESUMPTION. An unfavorable presumption will not be indulged against a defendant failing to appear and testify on a business matter in issue, where it appears that it was transacted through his subordinates, and that the defendant was not familiar with its details.

6. **Corporation**: BY-LAWS: TRANSFER OF STOCK A corporate by-law prohibiting the transfer of stock except by a formal one on its books will not, in the absence of a constitutional or statutory prohibition, render invalid a conveyance by a transfer of the stock certificate.

7. ———: ———: ———. Such transfer is good against an execution creditor of the stockholder who had no notice of the transfer when the execution was levied, but was notified thereof before he purchased the stock, at a sale under the execution.

Wilson v. The St. Louis & S. F. Ry. Co.

*Error to St. Louis City Circuit Court.*

AFFIRMED.

*Botsford & Williams* for plaintiff in error.

( 1 )  Neither James nor Jesse Seligman, although parties to this suit, testify as a witness, either as to the alleged transfer of the stock or upon the question of partnership, or upon any other question in the case. It is well settled in this state that the failure of a party to a suit to testify to facts within his knowledge, and put in issue in the case by him, raises a presumption against him. *Baldwin v. Whitcomb*, 71 Mo. 658; *Goldsby v. Johnson*, 82 Mo. 605; 2 Whart. on Ev., sec. 1266.  ( 2 )  The holder of the certificate is not the owner of the corporate stock.  *Pullman v. Upton*, 96 U. S. 328; *Johnson v. Case*, 99 U. S. 631; *Railroad v. Moss*, 14 Beav. 64; *Adderly v. Storm*, 6 Hill (N. Y.) 634; *Wheelock v. Kost*, 11 Cush. (Mass.) 183; *Miller v. Ins. Co.*, 51 Mo. 55; *McLaren v. Franciscus*, 43 Mo. 468; *Erskine v. Lowenstein*, 82 Mo. 306; *Fowler v. Ludwig*, 34 Me. 455; Thompson on Stockholders, ch. 13.  ( 3 )  The lower court erred in holding that notice of the transfer of the certificates at the execution sale defeated plaintiff's title.  *Ins. Co. v. Able*, 48 Mo. 136; *Bank v. Bank*, 45 Mo. 513.  ( 4 )  The St. Louis circuit court had jurisdiction of the motion for execution against the Seligmans, and as stockholders on the notices of said motion, personally served on said Seligmans in the city of New York, and posted up in the office of the clerk of said court; and the judgment of said court awarding such execution is valid and binding on defendants, and cannot be collaterally attacked in this suit.  ( 5 )  The pendency of this suit of James and Jesse Seligman against the plaintiff and the defendant railway company in the United States circuit court for the eastern district of Missouri, to set aside and cancel the execution and sale

of said stock, and to enjoin a transfer of the same to this plaintiff on the stock books of the corporation, is no bar to the maintenance of this suit. It has long been settled by the decisions of the federal courts that the pendency of a suit between the same parties for the same cause of action, and seeking for the same relief in law or in equity in the state court, cannot be pleaded in abatement of a like suit between the same parties in the federal courts. *Hanlon v. Embrey*, 93 U. S. 548; *Gordon v. Geldfoil*, 99 U. S. 168; *Loring v. Marsh*, 2 Cliff. (C. C.) 311; *Wadleigh v. Veazie*, 3 Sumn. (C. C.) 165; *Hughes v. Elsher*, 5 Fed. Rep. 263; *Latham v. Chaffee*, 7 Fed. Rep. 520.

*James O. Broadhead* and *John O'Day* for Seligmans.

(1) The notice employed in attempting to acquire jurisdiction of the Seligmans is process, and could only be served within the territorial jurisdiction of the court. *Gilmore v. Byrd*, 15 Fla. 410. The matter of constructive service of notice or process is a matter of legislative will, and constructive service in any other manner than that designated by the law-making power is an absolute nullity. *Allen v. Mfg. Co.*, 72 Mo. 326; *St. Louis v. Goebel*, 32 Mo. 295; Whittlesey's Practice p. 64; *Blanton v. Jamison*, 3 Mo. 52; *Schell v. Leland*, 45 Mo. 293; *Smith v. Rollins*, 25 Mo. 408; *Stewart v. Stringer*, 41 Mo. 400. (2) Process or notice served beyond the territorial boundary of a state on a citizen of another state does not confer jurisdiction, and a judgment rendered on such service is void in state where rendered. *Pennoyer v. Neff*, 95 U. S. 714; *Baylis v. Railroad*, 19 Iowa, 206; *Emery v. Legro*, 63 Maine, 357; *Ross v. Buchanan*, 13 Ill. 55. A judgment *in personam*, without service within the territorial jurisdiction of the court rendering it, is void. *Wiley v. Pavey*, 61 Ind. 457; *Joyce v. Whitney*, 57 Ind. 550;

557. ( 3 )  A stockholder in a corporation is not a party to an action brought by or against such corporation in the sense that the court, by acquiring jurisdiction over the corporation, thereby acquires jurisdiction over the person or individual property of the stockholder; the court can only acquire jurisdiction over the stockholder by service of notice of process upon him within the state.  *Hardwick v. Jones*, 65 Mo. 54; *Whitman v. Cox*, 26 Me. 335; *Bank v. Cook*, 4 Pick. 405; *Adams v. Bank*, 1 Greenl. (Me.) 361; *Hannah v. Bank*, 67 Mo. 678.  A stockholder is not liable as in the case of a partnership.  *Savings Association v. Kellogg*, 63 Mo. 540; *Perry v. Turner*, 55 Mo. 418. ( 4 )  A summary proceeding against a stockholder of an insolvent corporation in accordance with the provisions of section 736, Revised Statutes of 1879, is in the nature of an original action, the notice required to be given partakes of the nature of original process, and service of notice beyond the boundary of the state, or by posting in the office of the clerk of the court, will not confer jurisdiction; therefore, a judgment rendered upon such service is void and of no binding force or effect in the state where rendered or elsewhere.  Service of notice on the stockholder within the territorial limits of the state is contemplated by the statute.  The state has full power over the person and property within its jurisdiction, but cannot extend its process beyond its boundaries.  *Howell v. Mengelsdorf & Co.*, 33 Kan. 194, also reported in 6 Am. & Eng. Corp. Cases, p. 413; *Amsbaugh v. Bank*, 33 Kan. 100; Rorer Inter-State Laws, 22; Freeman, Judgments, sec. 564, and authorities cited at page 417; *Railroad v. Weeks*, 52 Me. 461.  A summary proceeding against a stockholder by motion is an action, and the stockholder is entitled to trial by jury.  *Bank v. Anderson* 1 Mo. 244; *Bank v. Mfg. Co.*, 9 Cush. 585. ( 5 )  The uncontradicted evidence establishes that J. & W. Seligman & Co. were not the owners of the stock attempted to be sold, at the time

the same was levied upon, but that the years prior thereto had assigned the stock to *bona fide* holders, for value, by executing a blank assignment and power of attorney indorsed on the back of the stock certificates. This transfer, although not made by an entry on the transfer books of the company, is valid against subsequent attaching and execution creditors. 4 Am. & Eng. Railroad Cases, pp. 342–3, and authorities there cited; *Eames v. Wheeler*, 19 Pick. 442; *Nesmith v. Bank*, 6 Pick. 324; *Sargent v. Railroad*, 9 Pick. 20; *Sargent v. Ins. Co.*, 8 Pick. 90; *Bank v. Mfg. Co.*, 127 Mass. 563.

*E. D. Kenna* for St. Louis & San Francisco Railroad Company.

(1) Neither the laws of a state nor the jurisdiction of its courts can extend beyond its territorial limits. A state has complete jurisdiction over persons or property found within its boundaries, but beyond them it cannot go, and a personal judgment rendered against a non-resident who has not been served within the state is void. Freeman on Void Judicial Sales, sec. 3; *Howell v. Mengelsdorf*, 33 Kan. 198; *Pennoyer v. Neff*, 95 U. S. 714; Story on Conflict of Laws, ch. 2; Rorer on Inter-State Law, ch. 22; Wheaton on International Law, p. 2, ch. 2; *Smith v. McCutcheon*, 38 Mo. 415; Potter's Dwarris on Statutes & Constitution, 361; *Denny v. Ashley*, 12 Colo. 165; Cooley, Const. Lim. [5 Ed.] 499, 500. (2) "The established rule of construction is that regulations as to the transfer of stock on the books of the corporation, whether done under a statute or under the by-laws of the corporation, are intended merely for the benefit and convenience of the corporation itself, and such regulations it has sometimes been said may even be waived by the corporation." *Bank v. Cartwright*, 23 Wend. 362; *Bank v. Zacharie*, 44 U. S. 513; *Bank v. Richards*, 6 Mo. App. 461; 74

Mo. 77; *Sargent v. Railroad*, 9 Pick. 205; *Johnson v. Laflin*, 103 U. S. 804; *Leavitt v. Fisher*, 4 Duer, 20; *Bank v. McElrath*, 13 N. J. Eq. 21; *McNeal v. Bank*, 46 N. Y. 331, 332; *Bloom v. Hart*, 30 La. Ann. 716, 717; *People v. Elmore*, 35 Cal. 653; *Ins. Co. v. Goodfellow*, 9 Mo. 155.

SHERWOOD, P. J.—On the second day of April, 1883, in the circuit court of the city of St. Louis, plaintiff recovered judgment against the Memphis, Carthage & Northwestern Railroad Company, for $72,799.38; and execution on such judgment having been returned unsatisfied, that court on December 3, 1883, on motion made for that purpose, ordered and adjudged that execution issue against the defendants Seligman, on the date last mentioned. There was no appearance to this motion on the part of defendants Seligman, and it is a conceded fact that they never have been resident in this state, but have been, and still are, resident in the city of New York. Written notice of the intended application for execution and copies of the motion were served upon said defendants at their said residence.

Under the general execution thus issued, certain shares of stock, preferred and otherwise standing in the names of J. & W. Seligman & Co. on the stock books of the defendant railway company, were levied on and sold on the eighteenth day of December, 1883, as the property of the defendants Seligman, plaintiff becoming the purchaser on that day, and he, thereupon, instituted the present proceeding, which has for its object the entry of a judgment and decree of that court, compelling the defendant railway company to place the plaintiff's name on its transfer stock-books as the owner of the shares of stock described in the petition, and to permit him to exercise the usual rights incident to such ownership, and to have the right and title of the defendants Seligman decreed to be in plaintiff, by reason of his purchase aforesaid, etc,

The circuit court, on the evidence adduced at the hearing, dismissed the petition, and the plaintiff comes here on writ of error.

Other facts necessary and sufficient to an understanding of the cause will be noticed hereafter, as required.

I. It is claimed, in support of the validity of the execution sale, that the service of the notice and motion, though made in the state of New York, and upon persons there resident and never resident in this state, was legal, and gave the circuit court jurisdiction to award the execution.

Section 736, Revised Statutes, 1879, provides: "If any execution shall have been issued against any corporation, and there cannot be found any property or effects whereon to levy the same, then such execution may be issued against any of the stockholders to the extent of the amount of the unpaid balance of such stock by him or her owned; provided, always, that no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after sufficient notice in writing to the person sought to be charged; and upon such motion such court may order execution to issue accordingly; and provided, further, that no stockholder shall be individually liable in any amount over and above the amount of stock owned."

It is insisted that such service may be had as provided in section 3505, Revised Statutes, 1879, which reads this way: "Notices shall be in writing, and shall be served on the party or his attorney, in the manner prescribed in this article, unless otherwise provided by law. The service may be made by delivering to the party or his attorney a copy of such notice, or by leaving a copy at the usual place of abode of the party or his attorney, with some person over the age of fifteen years, or with the clerk of the party or his attorney."

The next succeeding section (3506) provides: "If neither the adverse party nor his attorney resides in this state, such notice may be put up in the office of the clerk of the court wherein the suit is pending or the proceedings are intended to be had."

It is plain, from these statutory provisions, that they refer, as their terms would naturally import, to a suit *then pending in a court* which has already acquired jurisdiction of the party to be served with the notice; for the party thus intended to be served is spoken of in section 3506 as "*the adverse party*," and as having an "*attorney*," meaning an attorney of record. This language would obviously be without meaning where as yet there is neither litigation nor adverse parties, and, consequently, no attorneys of record, on whom notice could be served. Thus it will readily be seen that, if the plaintiff's contention be correct, that this statute applies to the service of a notice in an instance like the present, then a service of such a notice would be equally good, as to non-residents, were it simply posted up in the clerk's office as provided in section 3506. In fact, in case of a non-resident party with a non-resident attorney, this would be the *only* method.

In the same chapter 21 where section 736 is found, section 751 occurs, which provides that "all notices, orders and rules required to be served in the progress of any cause shall be served in like manner as in other civil cases." This section evidently refers also to *interlocutory* notices, etc.,—those "required in the *progress* of any cause,"—and not to those notices, etc., by which the *action is begun*. The statute in question really makes no provision for the method of the service of notice; it merely requires "sufficient notice in writing *to the person sought to be charged*." The evident object of the statute was to provide that the motion should be in the nature of an action at law, and governed by the usual incidents pertaining thereto; and, where the statute requires notice without any

qualifications, *personal* notice must be given. "The doctrine of constructive notice is altogether the creature of statutory enactment, and has no existence until it receives legislative recognition." *Leach v. Cargill*, 60 Mo. 316. But the personal notice in this case, having been served outside of the state, *has not been served according to law*, for the statute nowhere permits or directs this sort of service, and, therefore, the notice in question was a nullity; because, wherever service is had or notice given with the view of subsequent adjudication, such service or notice must comply with statutory requirements in order to possess any legal efficacy. *Allen v. Mfg. Co.*, 72 Mo. 326, and cases cited. Mere notice of service, not according to law, brings no one into court, nor does mere knowledge on the part of the party notified of the pending proceedings have any more valid effect. *Potwine's Appeal*, 31 Conn. 381; Smith, Merc. Law, 322. Wherever proceedings are intended to result in an adjudication, and such proceedings differ from the course of the common law, a strict compliance with all material directions of the statute is essential. Freem. Judgm. [3 Ed.] sec. 127, and cases cited. No such compliance with the statute can be claimed here.

II. It will not be intended that the statute authorizes such a method of service as that on which plaintiff relies; but if the statute *did, in terms*, require the personal service of such notice outside of the state on a non-resident in order to the rendition of a personal judgment, or its equivalent, on a money demand, such statute would be wholly void as to such extra-territorial service. It scarcely requires to be stated that this position is sustained by abundant authority; indeed, it seems to be questioned by none. On this point Judge COOLEY, after speaking of the validity of substituted service by publication, etc., says: "But such notice is restricted in its legal effect, and cannot be made available for all purposes. It will enable the

Wilson v. The St. Louis & S. F. Ry. Co.

court to give effect to the proceeding so far as it is one *in rem*, but when the *res* is disposed of the authority of the court ceases. The statute may give it effect so far as the subject-matter of the proceeding is within the limits, and, therefore, under the control of the state; but the notice cannot be made to stand in the place of process, so as to subject the defendant to a valid judgment against him personally. In attachment proceedings the published notice may be sufficient to enable the plaintiff to obtain a judgment which he can enforce by sale of the property attached, but for any other purpose such judgment would be ineffectual. The defendant could not be followed into another state or country, and there have recovery against him upon the judgment as an established demand. The fact that process was not personally served is a conclusive objection to the judgment as a personal claim, unless the defendant caused his appearance to be entered in the attachment proceedings. Where a party has property in a state, and resides elsewhere, his property is justly subject to all valid claims that may exist against him there; but, beyond this, due process of law would require appearance or personal service before the defendant could be personally bound by any judgment rendered." Cooley, Const. Lim. [ 5 Ed.] 500, 501, and cases cited. See, also, *Town of Pana v. Bowler*, 12 Am. & Eng. R. R. Cases, 576; *Brooklin v. Ins. Co.*, 99 U. S. 362; *Pennoyer v. Neff*, 95 U. S. 714; *Sim v. Frank*, 25 Ill. 125; Story, Confl. Law, sec. 546, *et seq.*

"The tribunals of one state have no jurisdiction over the persons of other states, unless found within their territorial limits; they cannot extend their process into other states, and any attempt of the kind would be treated in every other forum as an act of usurpation, without any binding efficacy. 'The authority of every judicial tribunal, and the obligation to obey it,' says Burge in his Commentaries, 'are circumscribed by the

limits of the territory in which it is established.'"
*Galpin v. Page*, 18 Wall. *loc. cit.* 367.

Judge STORY says: "Considered in an interna-
tional point of view, jurisdiction to be rightfully exer-
cised must be founded either upon the person being
within the territory, or upon the thing being within
the territory; for otherwise there can be no sover-
eignty exerted, upon the known maxim, '*Extra
territorium jus dicenti impune non paretur.*' * * *
On the other hand, no sovereignty can extend its pro-
cess beyond its own territorial limits to subject either
persons or property to its judicial decisions. Every
exertion of authority of this sort beyond this limit is a
mere nullity, and incapable of binding such persons or
property in any other tribunals. This subject, however,
deserves a more exact consideration." Story, Confl.
Laws, sec. 539.

Drake says: "But where no process is served on
the defendant, nor property attached, nor garnishee
charged, nor appearance entered, a judgment against
the defendant, based on a publication of the pendency
of the suit, will be void, and may be impeached collat-
erally or otherwise, and forms no bar to a recovery
sought in opposition to it, nor any foundation for a
title claimed under it, notwithstanding the statute laws
of the state expressly authorize a judgment to be ren-
dered against a defendant under such circumstances.
In cases of this description, while a levy on property
would justify the exercise of jurisdiction, and the gar-
nishment of one indebted to the defendant would be
regarded, *pro hac vice*, as equivalent to a levy, yet the
indebtedness of the garnishee must be *shown;* and a
judgment rendered against a garnishee who does not
appear and answer, and against whom in such case the
statute authorizes judgment to be rendered for the
whole amount of the judgment against the defendant,
without proof of his indebtdness to the defendant, will

not sustain the jurisdiction." Drake, Attach. [6 Ed.] sec. 449.

"Even if a state has passed a statute authorizing its courts to take jurisdiction of personal actions against debtors or others who cannot be reached by process, or of property actions, when the property cannot be seized, actually or constructively ; and if the courts proceed accordingly, and render judgments, such judgments are not to be regarded by the courts of other states, nor by federal courts sitting within the state, nor by courts of the state itself, for the reason that no state can exercise power beyond its bounds, nor conclude persons or property beyond them.   Such statutes have been passed, such power has been assumed and exercised, in more than one state, though very rarely. Courts have been thus nominally authorized to take cognizance of personal actions against non-residents, after publication of notice, without personal summons, personal appearances or attachment of property ; but the supreme court of the United States has decided such proceedings under such a statute to be jurisdictionless, null and void." Waples, Attach. 339.

In *Smith v. McCutchen*, 38 Mo. 415, a judgment *in personam* for a debt was rendered upon a mere order of publication, and such judgment was held absolutely void, and that a party summoned as a garnishee upon such judgment could defend and show the invalidity of such judgment by reason of want of jurisdiction in the court to render it. To the same effect, see, also, *Latimer v. Railroad*, 43 Mo. 105, and numerous other authorities cited by defendants.

III.   And it is entirely immaterial what is the means or method pointed out by the statute, or used in this instance, to acquire jurisdiction of the defendants Seligman—whether by writ or notice, it is properly denominated "*process.*" 6 Com. Dig., p. 93 ; And. Law Dict., tit. "*process ;*" *Dwight v. Merritt*, 18 Blatchf. 306 ; *Paper Co. v. Paper Co.*, 19 Fed. Rep. 252.

If process, then the necessity for such process being served in the method prescribed by law, and that such law and that such method does not attempt to extend jurisdiction beyond the proper territorial limits, is obvious. See 18 Blatchf. and 19 Fed. Rep., *supra*, as well as former authorities. The process in this cause, being unknown to the law, as to its method of service, and as to its extra-territorial operation, if that method were otherwise legal, must be held as *no process at all*. See 18 Blatchf. and 19 Fed. Rep., *supra*. Every subsequent step dependent thereon must, therefore, be deemed void. In concluding this paragraph, it may be remarked that section 736 requires "sufficient notice in writing *to the person sought to be charged*." In England, from whence that section was derived, it was held, prior to our statute being amended so as to be a copy of the English law, that such notice must be personal. *Railroad v. Railroad*, L. R. 2 C. P. 15; *Edwards v. Railroad*, 1 C. B. ( N. S.) 409. Under the operation of a familiar principle, this construction of the statute followed and attended its adoption in this state. *Skrainka v. Allen*, 76 Mo. 384; *Skouten v. Wood*, 57 Mo. 380. But, for reasons already given, such service though personal was valueless, because made outside of our jurisdiction.

IV. Nor is this case unfavorably altered for the defendants Seligman, because they are charged with being stockholders in the corporation against which the plaintiff recovered judgment. A stockholder is not, in any sense, a party to the judgment rendered against a corporation to which he may belong, nor does such judgment bind his property. *Hardwick v. Jones*, 65 Mo. 54; *Hannah v. Bank*, 67 Mo. 678; *Barclay v. Ins. Co.*, 26 Mo. 490; *Whitman v. Cox*, 26 Me. 335; *Bank v. Cook*, 4 Pick. 405; *Adams v. Bank*, 1 Greenl. ( Me.) 362. In *Blackman v. Railroad*, it was ruled that, upon a corporation being sued, a stockholder is not a party to the action, and not before the court. 58 Ga. 189. And

in England, in *Hitchings v. Railroad, in re Emery*, 20
L. J. C. P. 31, where the proceeding was on the English
statute already referred to by motion for judgment
against a debtor of the corporation, MAULE, J., says, in
referring to a former case : "In that case it was held
that the facts must be suggested upon the record. This
is an attempt to charge a person in execution who is not
a party on the record. [The principle of those decis-
ions is that the party should have some opportunity for
having the matter tried by a jury and bringing a writ
of error if necessary.] And, though the acts say that
execution shall issue, they mean after the proper stages
have been taken to make the person intended to be
charged a party to the record." This ruling was made
in 1850.

Accepting these authorities as the correct guide,
any proceeding against the stockholders subsequent to
the judgment rendered against the corporation must be
regarded as an *original and independent proceeding*,
as much so as is garnishment process against a mere
stranger to the record. But unless the service upon
the garnishee be valid in form, and be served within the
jurisdiction rendering the judgment, such judgment
when rendered will not bind him. *Norvell v. Porter*,
62 Mo. 309 ; Drake, Attach. [6 Ed.] sec. 451 *d ;* Thomp-
son, Liability Stockholders, secs. 357, 359. And in
order to bind a stockholder in a corporation who is the
debtor of such corporation, he must be subject to the
process of the court by being found and served within
its jurisdiction, and there sued just as a garnishee by
having the garnishment process served upon him.
Garnishment process is held to be a suit. Drake,
Attach., sec. 452 ; *Meints v. Rail Mill Co.*, 89 Ill. 48.

The process against the defendant Seligmans *was
in substance and effect a process of garnishment*, since
it sought to appropriate to the demand of the plaintiff
whatever debt they might owe to the judgment debtor,

the corporation.   Drake, Attach., sec. 452; Waples on Attach. 342–5.

There are, indeed, strongly resemblant features between process which summons for judgment a stock-holder and process which summons for a like purpose an ordinary party as garnishee.   In either case, not-withstanding the proceeding is sometimes said to be auxiliary to the main one, yet, in both, the movement against the stockholder as well as the garnishee *is an independent and original action*, and so this court has treated it in regard to stockholders.   *Erskine v. Loew-enstein*, 82 Mo. 301 ; *State ex rel. v. St. Louis Court of Appeals*, 87 Mo. 374.   In which latter case it was ruled that a "motion for execution against a stockholder should be treated as a part of the record without being copied into the bill of exceptions."   This ruling is alone consistent with the theory that such motions occupy a different plane from those motions which are interlocutory in their nature, and can only become a part of the record by being preserved in the bill of exceptions.   In the former case it was held that a motion for execution was in the nature of a suit in equity at common law to reach assets in the hands of the stockholder.

*Any process, whether notice, writ or motion*, which when served upon a party will have the effect to author-ize an order or judgment *in personam* against him, upon the rendition of which a general execution may issue leviable on all the property in the state of which he may be possessed, cannot be regarded in any other light, *so far as that party is concerned, than as an independent proceeding*.   Were such a party sued in another form of action, no doubt could be entertained of the necessity for notice, proper in form and substance, and served within the proper jurisdiction in order to its validity.   But in a summary proceeding under the statute, there are the same personal issues to try, to-wit, whether the person sought to be charged is indeed a

stockholder, and if he is indeed indebted to the insolvent corporation, and the same necessity for the observance of all the essentials necessary to the arrival at a correct conclusion, and in the end there is the same personal judgment to be entered if the proceedings are successful.

No substantial distinction can, therefore, be taken between the incidents which naturally accompany service of process in the two cases; whatever cause would invalidate the service of process in one instance would do so in the other, in either case the proper service of the process in all respects is essential to the jurisdiction of the court, and essential, also, in that it must meet the constitutional mandate respecting due process of law. The law regards the substance of things, not their shadows.

This is the view taken in Kansas on a statute which is virtually a copy of section 736, and there it was held that such a motion partakes of the nature of original process, and that, if served on a stockholder in Chicago, such service is invalid, and the party defendant may appear specially, and have the resultant order vacated. *Howell v. Manglesdorf*, 33 Kan. 194. In that case, the following apt quotation is approvingly made: "Where the object of the action is to obtain a judgment against the defendant upon which an execution may issue, to be levied generally of his goods and chattels, or of his property, personal, real and mixed, it is necessary at common law that there should be a personal notice, citation, summons or subpœna, or that the defendant should voluntarily appear to the action. In cases of this character, such notice or appearance is indispensable to the jurisdiction of the court." Wade, Law Notice, sec. 1137.

Various citations, which either directly or by necessary implication support the conclusions announced in the case just cited, will be found collated by the

industry of counsel for defendants. Being well satisfied of the invalidity of the service of process in this case on the different grounds, constitutional and otherwise, already stated, it is deemed unnecessary to discuss in detail the authorities cited in opposition to these views; none of them, however, it is thought, will be found on careful examination to announce a doctrine materially at variance with what has already been advanced, and, if they did, we should not be inclined to follow them.

But it may be said in concluding the discussion on this point that if, as already seen from the authorities cited, it is beyond the power of the legislature of a state to extend, even by express statutory enactment, the jurisdiction of its courts, or to lengthen the reach of their process, then most certainly it would be wholly beyond the power of parties, by any contract made, or consent given by them to have a similar jurisdictional effect; an effect entirely beyond the power of the legislature to authorize; an effect which, once admitted, would immediately wipe out, not only state boundaries and constitutional provisions, but be limited alone by the boundaries of the habitable globe; for thus far, upon such a theory, would jurisdiction extend and process run. The base for such a theory of the law, it must be confessed, would be quite simple: *First.* Given a contract made in any state, by a non-resident thereof; *second*, imply a contract, based upon the former, of submission to any jurisdiction the state where the contract is made may choose to have her courts assume over such contracting party or which such courts may assume, and the jurisdictional formula is complete.

V. Judge THAYER, before whom this cause was heard, found from the evidence that the defendants Seligman were not the owners of the stock in controversy at the time of the levy thereon, but that the same had been transferred prior thereto. After reading the

evidence preserved in the record, we have reached the same conclusion, and it would serve no useful purpose to set out the evidence in detail. On · this point it seems uncontradicted. It is said, however, that the fact that the individual defendants to this proceeding failed to come upon the witness stand, and testify as to the transfer of the stock in question, is prejudicial to their cause; and *Baldwin v. Whitcomb*, 71 Mo. 658, and *Goldsby v. Johnson*, 82 Mo. 605, are cited as showing that from · such failure unfavorable presumptions would be indulged against them. But in this case there is no foundation laid for such presumptions, because it clearly appears that the business of such defendants was transacted through their subordinates, with the details of which business they evidently were entirely unfamiliar.

VI. The next point for discussion is whether the plaintiff acquired any title to the stock in question by reason of his purchase at the execution sale. It is insisted on his behalf that he acquired a good title by reason of his purchase, and in this connection certain constitutional and statutory provisions are relied upon, as well as certain by-laws of the defendant corporation.

The constitutional provision, article 12, section 15, is the following: "Every railroad or other corporation organized or doing business in this state, under the laws or authority thereof, shall have and maintain a public office or place in this state for the transaction of its business, where transfers of stock shall be made, and where shall be kept for public inspection books in which shall be recorded the amount of capital stock subscribed, the names of the owners of the stock, the amounts owned by them respectively, the amount of stock paid, and by whom, the transfer of said stock, with the date of transfer, the amount of its assets and liabilities and the names and places of residence of its officers. * * *"

The statutory provisions, except as already quoted, are these ( R. S. 1879, ch. 21 ):

"Sec. 706. Every corporation, as such, has power: * * * *Sixth*, to make by-laws not inconsistent with existing laws, * * * for the transfer of its stock. * * *"

"Sec. 714. * * * In all cases where the right to vote upon any share or shares of the stock in any incorporated company shall be questioned, it shall be the duty of the inspectors to require the transfer books of such corporation as evidence of stock held in such corporation, and all shares that may appear standing thereon in the name of any person or persons shall be voted upon by such person or persons directly by themselves or by proxy.

"Sec. 715. At every election of directors the transfer books of the corporation shall be produced to test the qualifications of the voters; and no person shall be admitted to vote, directly or by proxy, except those in whose names the shares of the stock of the corporation shall stand on such books, and shall have so stood for at least thirty days previous to the election."

"Sec. 720. Every such corporation shall keep a book in which the transfer of shares of its stock shall be registered, and another book containing the names of its stockholders, which book shall at all times, during the usual hours of business, for thirty days previous to an election of directors, be open to the examination of the stockholders."

"Sec. 737. The clerk or other officer having charge of the books of any corporation, on demand of any officer holding any execution against the same, shall furnish the officer with the names, places of residence, so far as to him known, and the amount of liability, of every person liable as aforesaid."

"Sec. 739. The stock of every company formed under this act shall be deemed personal estate, and shall be transferable in the manner prescribed by the

by-laws of the company; but no shares shall be transferred until all previous calls thereon shall have been fully paid."

"Sec. 841. Every railroad company, incorporated or doing business in this state, * * * shall * * * annually * * * on or before the first day of August, transmit to the office of the railroad commissioners a full and true statement, under oath of the proper officers. of said corporation, of the affairs of the corporation, as the same existed on the first day of the preceding July, specifying: *First*, the amount of capital stock subscribed, the number of shares, and the par value thereof; *second*, the names of the owners of its stock, the amount owned by them respectively, and the residence of each stockholder, as far as known."

"R. S. 1879, ch. 32, sec. 2354. The following property shall be liable to be seized and sold upon attachment and execution issued from any court of record: * * * *Second*, all the rights and shares in the stock of any bank, insurance company or other corporation, * * *"

"Sec. 2363. When an execution shall be issued against any person being the owner of any shares or stock in any bank, insurance company or other corporation, it shall be the duty of the cashier, secretary or chief clerk of such bank, insurance company or other corporation, upon the request of the officer having such execution, to furnish him a certificate, under his hand, stating the number of rights or shares the defendant holds in the stock of such bank, company or corporation with the incumbrance thereon.

"Sec. 2364. The officer, upon obtaining such information, or in any other manner, may make a levy of such execution on such rights or shares by leaving a true copy of such writ with the cashier, secretary or chief clerk; and, if there be no such officer, then with some other officer of such bank, company or corporation, with an attested certificate by the officer making

the levy that he levies upon and takes such rights and shares to satisfy such execution."

Section 2370 provides that ten days' notice of time, terms and place of sale are to be given by the officer holding the execution.

"Sec. 2391.   When any rights or shares of stock in any bank, company or corporation shall be sold, the officer making such sale shall execute an instrument in writing, reciting the sale and payment of the consideration, and conveying to the purchaser such rights and shares; and shall also leave with the cashier, secretary or chief clerk, or if there be none, with any other officer of such bank, corporation or company, a copy of the execution and his return thereon; and the purchaser shall thereupon be entitled to all dividends and stock and to the same privileges as a member of such company or corporation as such debtor was entitled to."

The by-laws of defendant corporation, relating to the transfer of its capital stock in force at the time of the levy and sale of the stock in controversy, are as follows:

"Art. 3, sec. 6.   At every election of directors the transfer books of the corporation shall be produced to test the qualification of the voters; and no person shall be admitted to vote, directly or by proxy, except those in whose names the shares of the stock of the corporation shall stand on such books, and shall have so stood for at least thirty days previous to the election."

"Art. 12, sec. 2.   No transfer of stock shall be allowed except by stockholders in person, or by a properly constituted attorney, whose power shall be duly executed and filed with the company.

"Sec. 3.   At the time of the transfer of any stock the old certificates shall be surrendered and canceled before new certificates are issued therefor."

Under these provisions plaintiff claims that the stock books of the defendant corporation, showing the defendants Seligman to be the owners of the stock in

question, at the time of the levy of execution on such shares, that such ownership was to be determined *alone by such books*, and that, in consequence, the plaintiff acquired a good title by his purchase.

It is evident that the constitution makes no inhibition on the transfer of the stock of a corporation in other modes than the formal one upon its books, nor does the statute prohibit the usual method of transfer, to-wit, by the transfer of the certificate. The by-laws, it seems in this instance, make such prohibition ; but the general current of authority admits the validity of transfers made outside of the books of the corporation, some adjudications holding that such transfer, though not recorded on the books, passes the *legal* title ; and it is generally held that such regulations made in the by-laws are made for the benefit, protection and convenience of the corporation *itself*, and not for third parties, and that they do not incapacitate the stockholder from parting with his interest, and that his assignment, though not on the books, passes his entire title to the stock. This ruling appears to be in accordance with a custom generally if not universally prevalent in the commercial world ; a custom which should not be lightly disturbed by the courts.

There is much authority also for saying that such transfers are good, even as against attaching or execution creditors, such creditors being held to obtain only such title as the debtor had at the time of the levy. In *Bank v. Richards*, 6 Mo. App. 454, afterwards approved by this court, 74 Mo. 77, it was held that an attaching creditor cannot prevail against a prior *bona fide* purchaser whose purchase has not been entered on the books, although such transfer was *unknown* to the creditor at the time the attachment was levied, though the attaching creditor at the time of his purchase became aware of the transfer, and it was ruled in that case that the unregistered purchaser had the superior equity, and several cases in this court were approvingly

cited. *Ins. Co. v. Goodfellow*, 9 Mo. 150; *Chouteau Springs Co. v. Harris*, 20 Mo. 382; *Ins. & Trust Co. v. Able*, 48 Mo. 136; *Moore v. Bank*, 52 Mo. 379. Numerous authorities cited by counsel for the defendants support the same conclusion.

That ruling is also well supported by analogous rulings respecting a levy on real estate where there is an unrecorded deed, but which is put to record prior to the execution sale, and where it is held that such deed will prevail over any supposed title acquired at such sale. *Davis v. Ownsby*, 14 Mo. 170; *Black v. Long*, 60 Mo. 181; *Crow v. Drace*, 61 Mo. 225.

Here, though it be granted that the plaintiff had no notice at the time the execution was levied, yet this was not the case at the time of his purchase when he was duly notified. In these circumstances he cannot justly lay claim to being a *bona fide* purchaser as against the unregistered shareholders who hold the outstanding certificates; and such outstanding certificates being in the hands of prior purchasers, who also hold powers of attorney from the registered shareholders to execute written transfers on the books of the defendant corporation, constitute a valid ground for that corporation to defend this action; for otherwise that corporation might incur a double liability.

The considerations aforesaid lead to an affirmance of the judgment, and it is so ordered.

BLACK and BRACE, JJ., concur in all that has been said; BARCLAY, J., concurs in paragraphs 5 and 6, and expresses no opinion on the other points.