EMMA A. WILSON, Respondent, v. JOSEPH V. HOBBS
*et al.*, Defendants; B. R. HEMPSTEAD
*et al.*, Garnishees, Appellant.

St. Louis Court of Appeals, March 1, 1898.

1. **Declaration of Law**; Without evidence to support it should have
been refused.

2. **Garnishment**: PRACTICE. The denial of the answer of the gar-
nishees treats them as joint debtors. In this respect the denial
occupies the position and performs the office of a petition in an
action of land.

3. **Evidence**: HEARSAY. Conversations of witness with persons in
the absence of either of the garnishees, as to the understanding of
the purpose and terms under which one of the garnishees had depos-
ited the $1,000 and to other matters of the trades after they had been
consummated is hearsay evidence, and an objection to its admission
should have been sustained.

*Appeal from the Cape Girardeau Circuit Court.*—HON.
HENRY C. RILEY, Judge.

REVERSED AND REMANDED.

*W. H. Miller* for appellant.

In a garnishment proceeding the answer of a gar-
nishee to the interrogatories propounded, the denial of
that answer and the reply make up the issues. R. S.
1889, sec. 3534; *Brown et al. v. Gummersel,* 30 Mo. App.
341; *McQuarry v. Geyer,* 57 Mo. App. 213. Measuring
the denial of garnishees answer in this cause by the
rules of pleading, it does not state facts sufficient to
constitute a cause of action against these garnishees,
and the court erred in overruling the demurrer to the
same. A garnishment is an auxiliary to the original
action, yet so far as the garnishment is concerned it
constitutes an original suit. *Wilson v. R. R.,* 108 Mo.

588; *Spinger v. Cauffman*, 45 Mo. App. 5. Garnishment is essentially a legal proceeding and is not adapted to ascertain the equitable rights between the garnishees and the defendant. Am. and Eng. Ency. of Law, vol. 8, 1102; *Lackland v. Garesche*, 56 Mo. 267. The burden of proof is on the plaintiff in judgment on execution who denies the answer of the garnishee. In the absence of fraud the garnishing creditor occupies no better position toward the garnishee than does the defendant. *McQuarry v. Geyer, supra; Scarritt v. Moser*, 48 Mo. App. 543. The judgment in this case is erroneous, for the reason that it is a joint judgment against parties who are not jointly liable for any indebtedness to defendant Hobbs. 8 Am. and Eng. Ency. of Law, 1147 and 1166, 1167; *Ball v. Young*, 52 Mich. 476; *Cook v. Walthall*, 20 Ala. 324; *Toomer v. Randolph*, 60 Ala. 356.

*R. G. Ranney* and *Wilson Cramer* for respondent.

The answer of the garnishees to the interrogatories propounded is joint, and they are charged in the denial of the answer jointly with certain fraudulent transactions occurring between them and the defendants in execution. They raised by demurrer the question of an improper joinder of parties, but on the overruling of the demurrer waived the objection by filing in reply a general denial. *West et al. v. McMullen et al.*, 112 Mo. 405. The vendees and grantees of Hobbs and Son were participants in the frauds by which they undertook to defraud their creditors, and reaped jointly the benefits therefrom. There was therefore no improper joinder of parties. They acquired no equitable rights in the property of Hobbs and Son. It was a bold naked fraud from beginning to end. As such the transactions between them are open to investigation in

a garnishment proceeding. *Holmes Organ Co. v. Petitt*, 34 Mo. App. 536; *Epstein v. Clothing Co.*, 67 Mo. App. 221; *Brewing Ass'n v. Steimke*, 68 Mo. App. 56; *Lackland v. Garesche*, 56 Mo. 267. The obligation assumed by the parties to pay the debt due plaintiff was joint, and the judgment of the court below is proper.

BLAND, P. J.—On January 29, 1891, Joseph V. Hobbs and his son E. M. Hobbs borrowed from respondent $1,400, for which they executed their note, with Alfred Minton and Wm. H. Minton as securities. At the May term, 1896, of the Cape Girardeau circuit court Miss Wilson recovered a judgment on this note against the two Hobbs and the two Mintons for $1,544.94, and caused execution to issue thereon and caused the appellants Hempstead and Thompson to be summoned as garnishees thereon. In answer to interrogatories the garnishees denied any indebtedness to the defendants in the execution. The plaintiff in the execution filed an amended denial to the answer of the garnishees, in which they charged the fact to be that the garnishees, were indebted to Joseph V. and E. M. Hobbs in the sum of $2,000 then due, and alleged specially the following facts out of which it was claimed the indebtedness accrued:

"And plaintiff alleges and charges the facts to be that on and before the 5th day of August, 1891, defendants Joseph V. and Ernest M. Hobbs were partners, doing business as general merchants in the city of Cape Girardeau, Missouri, under the firm name and style of Hobbs and Son, and had in their said store on the 5th day of August, 1891, a large and valuable stock of goods, wares and merchandise, to wit, of the value of $10,000.

"That on the said 5th day of August, 1891, the said defendants were largely indebted to various whole-

sale merchants, for goods purchased and to this plaintiff, Emma A. Wilson, on a note for $1,400, dated January 29th, 1891, for borrowed money.

"And plaintiff further states that on or immediately prior to the said 5th day of August, 1891, the mercantile creditors of the said firm of Hobbs and Son were demanding and urging the payment of their said claims. That thereupon for the purpose of hindering, delaying and defrauding their creditors, the said defendants, Joseph V. and Ernest M. Hobbs, fraudulently transferred to Alfred Minton, William H. Minton, Robert L. Taylor and Benjamin R. Hempstead their said stock of goods at the wholly inadequate and fraudulent price of $3,000, including their notes, accounts, goods and store fixtures, and on the said 5th day of August, 1891, executed and delivered to them a bill of sale therefor.

"That the said several grantees in said bill of sale had full knowledge of the fraudulent intent and purpose of said defendants and accepted said transfers for the fraudulent purpose and intent of aiding and assisting the defendants in the execution of the fraudulent design aforesaid.

"And plaintiff further states that on the said 5th day of August, 1891, the said defendants were the owners in full of the following described premises upon which their store building was situated, that is to say: The west part of lot one in range E, of the city of Cape Girardeau, fronting 43 feet on Harmony street by 99 feet on Main street.

"That on the said 5th day of August, 1891, defendants conveyed said premises to Alfred Minton, Wm. H. Minton, and this garnishee, James H. Thompson for the expressed consideration of $1,400, but that the actual consideration as plaintiff has since learned, was the payment by said grantees of the said note for $1,400, exe-

cuted to her by said defendants and others on the 29th day of January, 1891, as aforesaid.

"And plaintiff further states that on or about the —— day of December, 1891, the said Alfred Minton, William H. Minton, and James H. Thompson, conveyed to garnishee, Benjamin R. Hempstead, an undivided one fourth interest in said premises for the expressed consideration of $400, the actual consideration, however, being the assumption and payment by him in conjunction with his said grantors of the said debt due this plaintiff.

"That neither of the said parties, Alfred Minton, William H. Minton, James Thompson, or Benjamin R. Hempstead has paid to the defendants, Joseph V. Hobbs and E. M. Hobbs, or to plaintiff, nor to anyone for them, the consideration for the transfer of said real estate, but that the same is yet due and owing by them, and was so due and owing by them at the time these garnishees were summoned to answer in this cause.

"And the plaintiff furthur states that in further execution of their fraudulent design and purpose aforesaid to hinder, delay, and defraud their creditors, the said defendants Joseph V. and E. H. Hobbs, on the 5th day of August, 1891, fraudulently disposed of all of their property excepting such as they might hold exempt from execution and sale and thereby render themselves insolvent, and ever since have been or remained insolvent.

"Therefore, the premises considered, plaintiff prays judgment against these said garnishees for the amount of her debt, interest, and cost."

The garnishees filed a demurrer to this amended denial, which being overruled they filed the following answer:

"The defendant garnishees, Benjamin R. Hempstead, and James Thompson, come now and for their

answer to the denial of garnishees' answer to interrogatories filed, deny each and every allegation in said denial to their answer contained, and pray hereof to be discharged with their costs, as heretofore prayed." A trial of the issues thus made was had before the court, who found the issues in favor of Miss Wilson, and gave her judgment against both garnishees for $1,785. From this judgment the garnishees duly appealed.

It appears from the evidence that Hobbs and son had been engaged in a general mercantile business in the city of Cape Girardeau, and that in August, 1891, they were largely indebted and being pressed for money; that at that time their stock of goods on hand was worth, according to the estimate of different witnesses, from $4,500 to $10,000; that on the fifth day of that month they sold the entire stock including notes and book accounts to Alfred and W. H. Minton, Robert L. Taylor and Benjamin R. Hempstead for $3,000, and delivered immediate possession to the buyers; that no invoice was taken of the goods before the sale, nor was there any examination made by which to ascertain or approximate the value or quantity of the goods in the store, by any of the purchasers, except Hempstead, who says he went into the store, looked around a little, looked at the books and thought the whole thing was worth from $3,000 to $4,000. On the same day Hobbs sold and conveyed to Alfred Minton, William H. Minton, and James H. Thompson, their store building, then in an unfinished condition, and upon which there was a mortgage of $5,000 to the Jackson county bank.

The evidence discloses the fact that Alfred Minton negotiated the trade for himself and Wm. H. Minton and Thompson, and that Thompson knew nothing of the trade until after the deed was made. The consideration for this conveyance was that the grantees

should pay the $5,000 mortgage and the note of Miss Wilson of $1,400.    It appears that the $5,000 debt on the house was money borrowed to erect and complete the building and that at the time of the trade the building was incomplete, but that there was still in bank of the $5,000 a sum estimated to be sufficient to finish the house.    This sum was in the trade passed from the credit of Hobbs and Son to the credit of the purchasers.    On the —— day of December, 1891, the Mintons and Thompson made a deed to an undivided one fourth of this store, house and lot to B. H. Hempstead for a consideration of $400, as expressed in the deed. · The testimony discloses the fact that the Mintons and Thompson about this time were having trouble about renewing the $5,000 note to the bank and that Hempstead agreed to become an indorser on the note in consideration of a conveyance to him of a one fourth interest in the store, house and lot.    He paid nothing directly to the grantees for this conveyance, nor was the fact disclosed to him at that time that the Wilson note had been assumed by the Mintons and Thompson as a part consideration for the property.    After the deed was made to Hempstead the interest on the Wilson note was paid by the two Mintons, Thompson, and Hempstead for several years.    Both Thompson and Hempstead testified that they at no time made these payments voluntarily, but that they were made over their protest, and that they only acquiesced in such payments to prevent a fuss with the Mintons.    There is some evidence that they made the payments without objection and understandingly.    On the day the goods were sold to the Mintons, Taylor and Hempstead, it appears that some of the creditors of Hobbs and Son were threatening to run attachments on the goods. J. V. Hobbs had $1,000 he had received for wheat sold from his farm.    The purchasers required him to de-

posit this $1,000 to secure them against loss or damage on account of litigation that might arise against the goods. The purchase price of the goods, less about $200, was also about the same time deposited for the same purpose. This latter sum (the purchase money of the goods) was afterward used by Hobbs and Son to compromise and settle with their commercial creditors. When J. V. Hobbs demanded the return of his $1,000, it appears that the purchasers of the store building claimed that they had to pay out money to carpenters, to whom Hobbs and Son were indebted for work done on the building, to prevent the filing of mechanic's liens against the building.

Hobbs demurred to these claims, but finally settled the matter, took what the other parties said was due to him, $400, and gave a receipt to them for the $400, dated May 19, 1894. According to all the testimony the payment of the $400 was accepted and receipted for by Hobbs on settlement and in satisfaction of the $1,000 deposit. J. V. Hobbs owned considerable real estate in Cape Girardeau county, all of which, except a homestead of some eighty-five acres, he conveyed at or about the time he and son sold the store and store building. He denuded himself of property, and the haste and unbusiness-like manner with which this was done leads to but one conclusion, that J. V. Hobbs was anxious to get rid of his creditors and resorted to the conveyance of all his property for that purpose. The purchasers of the store and building, from the testimony, at the time they made the trades knew of the financial embarrassment of Hobbs and Son and could not have failed to observe the anxiety of J. V. Hobbs to get rid of his property, and must have known that his purpose was to defraud his creditors. That they participated in such fraud is too apparent from the evidence preserved in the bill of exceptions to ad-

mit of a reasonable doubt. For Thompson, it is proper to observe, that he knew nothing about the trade, and was made a party to it without his knowledge. He trusted to Alfred Minton and was by him drawn into the transaction and made a party to it; he failed to repudiate the transaction and has suffered the consequences of his misplaced confidence by losing money on the deal.·

At the conclusion of all the evidence appellants moved that they be discharged. This the court refused and gave for respondent the following declarations of law:

"The court declares the law to be, that, if the court shall find from the evidence that part of the consideration for the transfer of the west part of lot one, in range E, of the city of Cape Girardeau, from Joseph V. Hobbs and E. M. Hobbs to Alfred Minton, Wm. H. Minton and James H. Thompson, shown by the deed of August 5th, 1891, introduced in evidence by plaintiff, was the payment by the grantees in said deed of the note executed to plaintiff on the 29th of January, 1891; that the judgment upon which the execution issued under which garnishees were summoned was obtained by plaintiff upon said note and shall further find that these garnishees were summoned on or about the 18th day of May, 1896, to answer interrogatories and that at that time the said grantees had not paid to plaintiff nor to the said Joseph V. and E. M. Hobbs, nor to anyone for them, the amount of plaintiff's said debt, then garnishee, James H. Thompson, is liable, and plaintiff is entitled to recover against him as garnishee in this case."

The court further declares the law to be that if the court shall find that the consideration for the transfer of the lot and store building from Joseph V. and E. M. Hobbs to Alfred Minton, James H. Thomp-

son and William H. Minton, was the payment of the note known as the Wilson note, and shall further find that afterward said Minton and Thompson conveyed to Benjamin R. Hempstead one fourth interest in said lot and store building and the consideration of said conveyance was the payment of the Wilson note, and shall further find that at the time said Hempstead was garnished in this cause the said note had not been paid, the said Hempstead is liable as such garnishee.

Hempstead was not a party to the conveyance of the real estate from J. V. Hobbs to A. Minton and others; had no contract whatever with Hobbs by which he directly or indirectly promised or agreed to pay to Hobbs or to any other person for Hobbs, a single dollar, on account of the purchase of said real estate. Upon what theory of law or by what legerdemain the testimony can be twisted to make it appear that Hempstead is the debtor of Hobbs on account of the purchase of this real estate, we are unable to discover.

The second declaration of law is without evidence to support it, and for that, if for no other reason, should have been refused. Certainly under the evidence in this case, it would not be contended that J. V. Hobbs could recover $1,400 and interest of Hempstead on account of the sale of this real estate. If Hobbs could not recover, Miss Wilson, as garnishing creditor of Hobbs, occupies no better position than he. *McQuarry v. Geyer*, 57 Mo. App. 213; *Scarritt Furniture Co. v. Moser*, 40 Mo. App. 543. We see no valid objection to the first declaration of law. If the assumption of payment of the $1,400 note of Miss Wilson was a part of the consideration for the real estate, and that note remains unpaid, then that much of the purchase price of the realty remained unpaid, and as the evidence discloses that there was not a novation

of the Wilson debt, the $1,400 is due to J. V. Hobbs and is the subject of garnishment. The counsel for respondent in their brief present another phase of the case, and seek an affirmance of the judgment upon the theory that the conveyance of the goods by Hobbs and Son to the Mintons, Taylor and Hempstead was for the purpose of defrauding the creditors of Hobbs and Son, and that Hempstead and Thompson were participants in that fraud.

The vice of this contention is that Hempstead and Thompson were not concerned in the same transaction; Thompson was not a party to the sale of the goods, and Hempstead was not a party to the sale of the real estate. The one may have been fraudulent, and the other *bona fide* (in fact there is no evidence of fraud in the conveyance of this piece of real estate). The denial of the answer of the garnishees treats them as joint debtors.

In this respect the denial occupies the position and performs the office of a petition in an action of law. *Wilson v. R. R.*, 108 Mo. 588; *Springer v. Cauffman*, 45 Mo. App. 5, and there can not be a joint recovery where there is not a joint indebtedness. It seems on authority that goods or the proceeds of goods fraudulently transferred by a debtor may be reached in the hands of the fraudulent transferee by garnishment. *Epstein v. Clothing Co.*, 57 Mo. App. 221; *Lackland v. Garesche*, 56 Mo. 267. But declarations of law were not asked on this theory of the case, and we will assume that the court proceeded upon the theory of the law announced in declarations of law asked and given; nor could the court have found against Thompson on the theory of a fraudulent conveyance of the goods, for he was not a party to that conveyance; nor could this inquiry be properly made on a denial in which Thompson and

JOINT recovery: joint indebtedness.

Hempstead are joined as joint debtors of Hobbs and Son. The appellants by answering over waived the objections of an improper joinder of parties raised by their demurrer. *West v. McMullen et al.*, 112 Mo. 405.

The witness Zimmermann and W. H. Minton were permitted to state conversations with ·Alfred Minton and Jošeph V. Hobbs, in the absence of either of the garnishees, as to Hobbs' understanding of the purpose and terms under which he deposited the $1,000, and to other matters of the trades after they had been consummated. This was hearsay evidence and appellant's objection to its admission on that ground should have been sustained. For the errors herein noted, the judgment will be reversed and the cause remanded. All concur.