DAIN MANUFACTURING COMPANY, Appellant, v. TRUMBULL SEED COMPANY, Defendant; T. LEE ADAMS, Respondent.

**Kansas City Court of Appeals, June 2, 1902.**

1. **Corporations: LIABILITY OF STOCKHOLDER: TRANSFER ON BOOKS.** Generally a shareholder is only released from his liability on his stock after it has been formally transferred on the books but this doctrine is generally founded on the law requiring transfers of stock to be entered.

2. ———: ———: OWNER: CREDITOR. While the Missouri statutes provide for stock books yet it is not requisite to title that the stock should be transferred on the books; and so where unissued stock has been fairly transferred to another by parol, the transferer is not liable to a creditor of the corporation.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

No briefs.

ELLISON, J.—The plaintiffs have a subsisting and unsatisfied judgment for $4,546.04 against the defendant corporation, and an execution issued against defendant on the seventeenth of December, 1900, was returned *nulla bona*. Plaintiff then instituted this proceeding against Adams, charging him with being a stockholder in defendant corporation with $4,000 of unpaid stock, and seeking to hold him on the judgment aforesaid for the latter sum. · The trial court found for Adams and plaintiff appealed.

It appears that Adams and Mrs. Trumbull were partners in a mercantile business, and that they subscribed for ten thousand dollars worth of corporation stock in one hundred shares of $100 each, the subscription being in the name of Adams. The corporation was then known as the Trumbull, Storm & Allen Seed Company. Fifty of these shares were issued to Adams as paid-up stock. Afterwards, ten additional shares were paid for in dividends. He thus had six thousand dollars in paid-up stock, leaving four thousand dollars unpaid and which was never issued. He also bought for the firm one thousand dollars of paid stock from one Bailey, making in all seven thousand dollars.

He and Mrs. Trumbull thereafter dissolved partnership, he buying her interest in the business. The purchase of her interest was really an exchange, which was shown to be as follows: He gave her his interest in the whole stock, paid and unpaid, and one thousand dollars in money and his interest in some "blue grass machinery" valued at $1,000, for her interest in the partnership business. The paid-up stock was indorsed and delivered to her, but the four thousand dollars unpaid, having never been issued, was merely included in the terms of the exchange, and Mrs. Trumbull took it without more than a verbal sale, or exchange in the manner stated. Adams ceased further connection with the corporation, the understanding between them be-

ing that she took his place in the corporation and assumed his liabilities on account of the unpaid stock. This occurred in 1894, and thence on down to the date of the execution in 1900, Adams was not recognized by the corporation as having any interest therein, direct or remote. On the other hand, Mrs. Trumbull was recognized as his successor and as occupying his place, and she claimed to be the owner of the right to the unpaid and unissued stock.

The stockholders coming to realize that the value of the capital stock was impaired, made a reorganization of the corporation under the name of the present defendant, and the old stock, which had been issued, was taken up, the certificates being pasted on stubs of the stockbook. New certificates were issued, and Mrs. Trumbull having paid in money and property about $2,700 on the unissued stock which she got of Adams, received certificates of paid up stock to the amount of $8,000, so that although she had paid in $2,700 in addition to $6,000 paid-up stock, and $1,000 Bailey stock received from Adams, being $9,700, she only received stock in the reorganization to the amount of $8,000.

The facts thus stated are substantially as shown by the record.

The only question is whether such state of facts released Adams from liability to creditors, to the amount of his unpaid stock. It is a common general statement of the law that a transferer of stock is only released from his liability thereon after it has been formally transferred on the books of the corporation. 1 Cook on Stockholders, sec. 258. But that statement is generally founded on provisions of the law requiring transfers to be entered on the stock or transfer-book of the corporation.

It has been held in this State that our law, while providing for a stockbook and for reference thereto for many specified purposes (in some instances to determine who are stockholders), yet the law does not make

it a necessary requisite to title, that the stock should be transferred on the books of the corporation. Wilson v. Railroad, 108 Mo. 588. So, therefore, in our view, no other judgment could have been rendered than that of the trial court. This view is sustained by Mr. Cook in his work aforesaid, as will be seen by reference to the above citation, and the notes thereunder.

We are not unmindful that in many instances a distinction should be taken between cases where the corporation itself, or a receiver thereof, is attempting to recover unpaid subscriptions of stock, and where a creditor of the corporation is seeking, as here, to recover a debt due from the corporation. But with that distinction in view, we are satisfied the facts established by the record release Adams from any liability on his subscription, and the judgment will therefore be affirmed. All concur.