WARNER HINES ET AL. v. JESSE M. SHUMAKER.

[50 South. 564.]

MOTION TO STRIKE THE STENOGRAPHER'S REPORT OF THE EVIDENCE FROM THE RECORD.

STENORGAPHER'S REPORT OF EVIDENCE. Notice to attorneys of filing. Code 1906, § 797.

Under Code 1906, § 797, requiring the clerk of the circuit court, as soon as the stenographer's report (notes transcribed) of the evidence is filed, to notify each attorney or firm of attorneys interested in the case, by mail or in person, that the same is on file:—

(*a*) Notice that the report (notes transcribed) is on file may be given to the attorneys personally by another authorized to do so by the clerk; and

(*b*) The attorneys to be notified are the attorneys of record in the case; and

(*c*) A notice to a member to a firm of attorneys, shown of record to have represented one of the parties, is notice to all of them, although the firm dissolved pending the suit; and

(*d*) Formal notice to a party's attorneys is unnecessary where his leading counsel had the report (notes transcribed) for the purpose of examining it for several days after it was filed, and returned it to the clerk, without making suggestion for its correction; the only purpose of notice being to give opportunity to inspect the report and suggest corrections.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

Shumaker, appellee, was plaintiff in the court below; Hines and another, appellants, were defendants there. From a judgment in plaintiff's favor the defendants appealed to the supreme court.

When the case reached the supreme court the appellee moved the court to strike from the record the stenographer's report (notes transcribed) of the evidence. The facts upon which the motion was based are stated in the opinions of the court.

*Flowers, Fletcher & Whitfield,* for motion.

The stenographer's notes in this case have never been signed or approved by the trial judge.

No notice was ever given to the firm of Flowers & Whitfield or May & Sanders by the clerk, either by mail or in person, that the said notes had been filed and were subject to their examination.

There has been no agreement between counsel for appellant and for the appellee that the said notes are true and correct.

Code 1906, § 707 reads: "as soon as the stenographer's notes, transcribed, shall be first received by the clerk of the circuit court he shall notify each attorney or firm interested in such case by mail or in person that the said notes were received and are on file." This is mandatory. The clerk has never notified the attorneys for the appellee or any one of them, either by mail or in person that the said notes had been received or were on file. There is no effort made by counsel for appellant to show that the clerk complied with this statute.

Counsel for the appellant present an affidavit of the clerk to the effect that the stenographer in order to save the clerk the trouble voluntarily agreed to carry a copy of the notes to each of the attorneys in the case. There is no provision in the statute, however willing the stenographer might be, which relieves the clerk from performing his duty under the statute. The

statute does not say that if a stenographer agrees to give the
notice that this relieves the clerk of his duty and that it is a com-
pliance with this statute which is mandatory, that he, the clerk,
notify each attorney, either by mail or in person.

There is no effort on the part of counsel for appellant to
show that the said stenograhper gave notice to each attorney and
to each firm representing the appellee in accordance with his
promise to the clerk.   As a matter of fact, according to the af-
fidavit of George W. May, of the firm of May & Sanders, no
notice was ever given him or his firm that the said notes had
been transcribed and were on file and subject to examination
until long after the time allowed by law for the examination and
approval of said notes as provided by Code 1906, § 797.   Ac-
cording to his affidavit neither he nor his firm ever agreed or
consented that the said notes are correct.   They did not know
and do not know whether the said notes are correct.

There is an effort on the part of counsel for appellant to show
a conversation between J. N. Flowers and V. Otis Robinson in
which counsel for appellant state that the said Flowers stated
that he would not of his own motion take advantage of the tech-
nicality but that his client might insist, and that he would re-
serve the right to do so.   This does not constitute an agreement
that the said notes were correct or that a motion would not be
made to strike out the said notes.   Indeed, according to the af-
fidavit filed by counsel for the appellant in reference to this
point it tends to show that they realize that the appeal in this
case was not perfected in accordance with the law and did not
comply with the law in reference to the filing of the stenog-
rapher's notes and the notice to be given by the clerk had not
been complied with.

*Tim E. Cooper* and *V. Otis Robinson, contra.*

It must be admitted frankly by counsel for appellants that
the clerk did not mail or serve personally a notice to attorneys,
of the filing of the transcript of stenographer's notes in the

clerk's office, and further that the notes were not delivered to George W. May personally.

Counsel claim that Code 1906, § 797, is "mandatory." We admit it, but we deny that the clerk shall himself, in his own proper person mail a notice that the notes are on file, or else go in person and deliver notice. The evident intention of the statute is to secure notice, not method of notice. Certainly learned counsel for appellee would not contend that the clerk might not send a courier with a notice? Could he not send a deputy? Could he not deputize a court stenographer, the official court stenographer, to deliver the notes themselves to attorneys? What better notice could be given? It would seem that this method would be a service, a convenience to attorneys. It is the plan pursued in more than half of the appeals. The service of the very filed record itself is, no doubt, quite as good as the service of a verbal or written brief notice that the record is on file. We can scarcely believe that attorneys for appellee are serious in their contention that the delivery of the filed record, with a request that same be approved without delay, and a reply asking for time in which to read over same, is not notice fully made under the statute.

But it is contended that the notes, or notice, was not delivered to George W. May; whom it is claimed is, and was at the time, a separate attorney.

If there were firms of lawyers on each side of the case, would it be necessary for each firm to sign the notes in approval? Mr. May, we submit, gives evidence of desiring to touch lightly in contending for this motion. He was a member of the firm of May, Flowers & Whitfield when the suit was filed. The client looked to J. N. Flowers, of the firm, as his attorney. No notice in a paper, or otherwise, on the dissolution of the firm made it appear that the old firm relations would not exist as to business then in course of trial.

It was perfectly natural for the clerk and for attorneys for appellant to look upon the firm as still in existence until the case was disposed of. No notice was given, and none alleged to have

been given, except through the medium of newspaper notices, and window signs, that the firm had dissolved, and there was nothing to show that the firm of May, Flowers & Whitfield was not in existence and acting as a firm in the conduct of this case. The firm of May & Sanders is not mentioned anywhere and at no time appeared as a firm on any paper until the filing of the brief to which this is an answer.

Flowers was chief attorney, so admitted by May, and neither May nor Flowers allege that the notes are incorrect, and May says in his affidavit that he would be bound by any agreement made by Flowers.

The firm of May, Flowers & Whitfield are estopped by their own act to deny correctness of notes or to set up failure to approve stenographer's notes.

The transcribed notes were delivered to the firm and were kept by them for three weeks.

No objections were ever filed and none made now.

Attorneys for appellee sent notes back to clerk with no comment and thus led the clerk into innocent error.

By these acts they have virtually placed the clerk in the attitude of having prejudiced the rights of appellants, simply because he relied on the fact that attorneys for appellee had not the notes in their possession and made no objections and refiled them with the clerk in such a way as to lead any confiding clerk into error.

It is hardly meet and proper to discuss the personal or official character of a man in a brief, but even though we have suffered the inconvienience and expense of fighting this motion, by the so-called and incorrectly alleged mistake of the clerk, we must say we do not think the less of him. He did just as hundreds of other men would have done under similar circumstances. We know that he would have suffered much rather than have placed attorneys for appellants in an embarrassing situation like this. E. D. Fondren, the clerk, is a man of honor and integrity of the highest degree.

When the notes were marked filed by him on May 6, 1909,

and promptly sent by the court stenographer to the two firms of attorneys on each side of the case, as they appeared on his docket, he thought that he had complied with his duty, and we submit that he had.

When the original was returned to the clerk's office three weeks later, by the employed stenographer of Flowers, and there was no objections filed and no comments, he thought the matter was closed and never dreamed that the silence meant not consent, but contention. We feel sure that Fondren was making an honest effort to give both sides a fair chance to try the case on its merits. In addition to this, let it be noted that it appears affirmatively that the notes are approved by Flowers of said firm.

Code 1906, § 4913, reads: "*Appeal not to fail, for certain reasons.* An appeal to the supreme court shall not be dismissed for want of jurisdiction because of a defect in the application for appeal, or in the bond, or because of any failure of an officer to comply with the requirements of law in reference to appeals; but all defects and irregularities may be cured by amendment so as to perfect the appeal and obtain the judgment of the supreme court in the case; but the court may dismiss an appeal for a failure of the appellant to do, within a reasonable time, what may be necessary to perfect his appeal."

We call special attention to *Gas & Electric Co. v. Simpson,* 118 Tenn. (10th case) 532, wherein an injunction was granted in a very similar case enjoining attorneys from prosecution of a motion to strike out on the ground of equitable estoppel where they had conditionally approved the transcribed notes.

WHITFIELD, C. J., delivered the (first) opinion of the court; the one afterwards set aside; it was as follows:—

The stenographer's notes in this case were not signed by the judge. Nor is there any agreement, in writing or otherwise, between the counsel for the respective parties that they were correct. At the time of the institution of this suit the declaration

was filed by May, Flowers & Whitfield, but before the trial of
the case in the court below that firm had been dissolved; Mr.
May associating himself thereafter with Mr. Saunders, so that
thereafter there were two separate firms, May & Saunders, and
Flowers & Whitfield.   Due notice of this dissolution was pub-
lished in the city papers, and of the formation of the other part-
nerships.   In addition to this, both the firm of May & Saunders
and Flowers & Whitfield had the names of their respective firms,
and the parties composing them, painted in large letters on the
windows of their offices, opposite the offices of the attorneys for
the appellant.   It is evident, from the affidavit in the case, that
the circuit clerk knew of these dissolutions, and that Mr. May
was in a new and separate firm, before these notes were filed.

On the trial in the court below, both these separate firms were
present and participated in the trial; that is to say, the firm of
Flowers & Whitfield, and the other independent firm of May
& Saunders.   It is conceded, very frankly, by learned counsel
for appellant, that no notice of any kind whatever was given to
Mr. George May of the filing of stenographer's notes, as the
statute imperatively requires should be done.   The language of
the statute is express, and has been over and over again declared
by this court to be imperative and mandatory.   See section 797,
Code of 1906.   That section reads as follows on this point:
"As soon as the stenographer's notes, transcribed, shall be first
received by the clerk of the circuit court, he shall notify each
attorney, or firm, interested in such case, by mail or in person,
that said notes were received and are on file."   As stated, there
is no pretense whatever that this provision in this statute was
complied with in any manner whatever.   Mr. May never had
any notice of any kind.   The circuit clerk testifies, in the sec-
ond affidavit, that the name signed to the declaration in the
case was May, Flowers & Whitfield; but this is no sort of ex-
cuse for failure to notify Mr. May, who was not, at the time of
the trial in the court below even, much less at the time of the
filing the notes after the trial, a member of the firm of May,

Flowers & Whitfield, but was a member of an independent firm, created after the declaration was filed in the case in the court below. The statute does not stop with directing the clerk of the circuit court to notify each attorney or firm, but expressly provides how he shall notify them—"by mail or in person." And in this case it is frankly admitted by counsel for appellant that, not only did he not notify Mr. May by mail or in person, but that he never notified him in any manner whatever.

The provision in the statute that each attorney or firm interested shall be notified is one of the highest wisdom. Suppose a case in which three separate attorneys represent the plaintiff on the trial in the court below, and the clerk gives notice to one of them, but not to the other two of the attorneys; these attorneys residing at points distant from each other in the state. Is it possible that the two attorneys not notified as required by the statute can be bound by reason of notice given to the other attorney, in the face of the express declaration in the statute that each attorney should be notified? Manifestly, not. Suppose, again, in such case, one of these attorneys is the leading counsel in the case, and the other two, being mere assistants should be notified, and the leading counsel not notified. Is it possible that the leading counsel can be bound by notice given to the other two? Just as manifestly not. And, of course, what is true of separate attorneys is true of separate firms. It is impossible to fail to see the wisdom, therefore, of the statute, when it imperatively and mandatorily requires the circuit clerk to give notice of the filing of the stenographer's notes to each attorney, and also to each firm interested in the cause. It is not for us to judicially legislate. The statute is so written, and wisely so written; and it is the duty, the imperative and mandatory duty, of the clerk to give the notice in the manner required by the statute.

We may also mention that in the very admirable substitute for section 797, Code of 1906, prepared by Judge FLETCHER, and adopted by the Bar Association, for recommendation for pas-

sage by the legislature, this same provision that each attorney and each firm shall be notified by the clerk is retained, and wisely retained.   It was the simplest thing in the world for the circuit clerk, since Mr. May lived in Jackson, in easy reach of his office, to give him the notice required.   He negligently failed to do so.   It is not for this court to engraft exceptions upon this statute, which has been construed so often as a mandatory statute, or in any wise alter its express direction.

Therefore the motion is sustained, and the stenographer's notes hereby stricken from the record.

MAYES, J., delivered the following dissenting opinion.

There is no doubt in my mind but that the motion to strike out the stenographer's notes should be denied.   The motion is utterly without merit, either as a question of fact or law, and to sustain this motion on the facts here presented is to do a great wrong to the appealing parties.   Of course, if the motion is sustained, all good that could possibly be accomplished by the appeal is destroyed, and a judgment for damages in the sum of $3,000, recovered against appellants in the court below, is made absolute, and they are denied the right to have their case reviewed by this court, a result which this court should avoid unless the facts of the case make it an unavoidable necessity.   Do the facts of this case make such holding necessary?   Let us examine the record and see.   The facts on which it is sought to have these notes stricken from the record are as follows, viz.:

During the year 1908, George W. May, J. N. Flowers, and Albert H. Whitfield, Jr., were associated together in the practice of law in the city of Jackson, as partners, under the firm name of May, Flowers & Whitfield.   While so associated, and in June or July of 1908, the firm was employed by one J. M. Shumaker to institute a damage suit against W. W. Hines and the Lamar Life Insurance Company for the sum of $50,000. It is unnecessary for the purpose of this motion to specify the basis of this suit.   The declaration was filed some time in

June or July, 1908, and the attorneys of record in the case consist only of May, Flowers & Whitfield, and it may be here stated, once for all, that the above firm is the only firm and the only lawyers that the record anywhere shows ever appeared, had any interest in the case in any way, except the counsel for appellants who oppose this motion to strike out. If it can be said *that there is any exception to the above statement, that exception* consists in this, viz.: When the stenographer began taking the testimony on the trial, in the face of his notes he voluntarily placed therein the following: "Appearances: Present and representing the plaintiff: George W. Mayes and Flowers & Whitfield. Present and representing the defendant: V. Otis Robertson and Tim E. Cooper." Now, even in this notation, made voluntarily by the stenographer, instead of Geo. W. May, the name of George W. Mayes erroneously appears; and this is the only thing in the record from the beginning to the end that could in any way indicate that there had been any change in the firm of May, Flowers & Witfield, or that any firm other than the above was interested in the case, and this notation is the voluntary act of the stenographer on the notes which it is now sought to strike out, without request from any person so to do, and without any notice to the clerk or request from any source to have any other firm or attorney, other than the ones who already appeared, entered as attorneys of record.

In January, 1909, the firm of May, Flowers & Whitfield dissolved and two new and independent firms were formed. Flowers & Whitfield associated themselves in a law firm under the above name, and Mr. May formed an association as partner with Mr. Saunders under the firm name of May & Saunders. When the dissolution and reorganization of the firms took place, publication of this fact was made in the daily papers of Jackson, and each firm had separate and disconnected offices, and had in large type on the door the firm name. While all this was done, no request was made on the clerk to enter the firm of May & Saunders as attorneys of record in the

case.   No notice was served on the clerk that this change in any way affected the interest of the already subscribed attorneys of record, or that any change was made in their interest as a firm in the suit then pending in the court.   In this attitude of affairs, the case came on for trial, and on the 17th day of April, the day on which the court adjourned, resulted in a judgment against appellants in favor of appellees in the sum of $3,000. Immediate notice of an appeal was given, and section 797, Code of 1906, allows sixty days to perfect that appeal by filing stenographer's notes, etc.   No extension of time was asked for, and none granted by the court.

At the conclusion of the case, V. Otis Robertson, of counsel for appellant, being anxious to take a trip East urged the stenographer to transcribe the notes at the earliest possible date, to the end that Robertson might see that the appeal was perfected before he went away; and Robertson also requested the stenographer to make a carbon copy of the notes, together with the original, the carbon copy to be for the private use of Robertson, and the original to be filed with the circuit clerk as the record in the case.   Accordingly, on the 6th day of May, following the adjournment of the court on the 17th day of April, and less than twenty days thereafter, the undisputed testimony shows that the stenographer transcribed the notes, and on that day, to wit, the 6th day of May, filed the original in the office of the circuit clerk, and they were so marked filed on that date.   After these notes were filed, and at the request of the clerk, the stenographer carried the filed notes to the attorneys for the purpose of getting them to agree as to the correctness of the notes.   He went first to the office of Mr. Robertson, delivering the carbon copy to him, and asking that he approve the original.   Mr. Robertson immediately indorsed his approval of the notes, and the stenographer immediately carried the original notes, that had been filed with the clerk of the circuit court and marked filed by him on that day on the last page, and delivered same to J. N. Flowers, of the firm of May, Flowers & Whitfield, with request that

he approve same; that firm being the only firm of record as attorneys. It is a conceded fact in this case that Flowers was acting as the leading attorney throughout the conduct of the case. When the notes were delivered, Flowers stated that he felt sure that the notes were correct, but preferred to look over same before approval. Afterwards the stenographer had another talk with Flowers, and Flowers complimented the accuracy of the record. After all this, with the stenographic notes showing in the initial page and style of the case and on the last page that same had been filed on the 6th day of May in the office of the clerk, Mr. Flowers retained these notes about twenty-four days for the purpose of inspecting and examining the same, and about the 1st day of June, without his signature of approval, returned them, through his stenographer, without comment or objection, to the clerk, with whom they had been already filed.

Thus it will be seen that the court adjourned on the 17th day of April, and the statute allowed sixty days for the filing of the stenographer's notes, which made the last day at which same could have been filed June 17th. In less than twenty days from the adjournment of court, to wit, on the 6th day of May, the notes had been transcribed marked filed by the clerk, and placed, so marked, in the hands of Mr. Flowers. Mr. Flowers retained them, for inspection, until about the 1st day of June, seventeen days before the time expired for filing, and then returned them to the clerk, by his stenographer, and himself in this way filed the notes seventeen days before the time limit expired. Now, this mysterious statute, so bunglingly drawn and so often appealed to successfully to defeat justice, has no doubtful attitude when its provisions are applied to an attorney who knows or has notice that the stenographer's notes are on file in the office of the clerk. It provides in such cases that if an attorney or firm interested in the case has this notice ten days before the expiration of the time allowed for filing, and shall not, within that time, file in writing with the clerk a statement of his ob-

jections to the transcript, the same shall stand approved by the operation of law.

In face of the facts of this case, showing that the notes themselves had been delivered to Mr. Flowers, bearing the subscription of the clerk on the last page that they had been filed, kept by him for more than three weeks for the purpose of examination, having on the initial page the style of the case, delivered to him with no object but that of notification, and returned by him and filed in the proper office, will the court ever hold that the law was not complied with because the statute says the clerk must notify "each attorney, or firm, interested in such case, by mail or in person," where the record so conclusively shows that, though the clerk failed to carry out the literal provisions of the statute, he adopted a surer, better method, namely, he placed the filed notes in the hands of the attorney himself and left them there for more than three weeks? Such literalness would be farcical, when the beneficent purpose of the statute is kept in view, and it would be a trifling with the sacred property rights intrusted to the protection of this court.

For some time nothing was heard about the notes in this case, the attorneys for appellant feeling certain that they had perfected their appeal; but about the latter part of July or the 1st of August it was discovered by counsel for appellant that opposing counsel had not indorsed their approval on the notes. The time for filing the notes allowed by law had then long expired; it having been out about June 17th. When counsel for appellant discovered the condition of affairs, he called up Flowers, of the former firm of May, Flowers & Whitfield, and requested Mr. Flowers to approve the notes or waive the matter. Mr. Flowers replied that he would not, of his own motion, take advantage of the technicality; but, if his client insisted, he would reserve the right so to do. During this conversation, showing that Mr. Flowers had examined the notes, he stated that after reading the transcript no errors were discovered, except typographical. Mr. May, of the former firm of May, Flowers &

Whitfield, was also communicated with, and also stated that he would not personally take advantage of the omission to sign and approve the notes, but that the case was being conducted by Mr. Flowers, and he would be governed by the wishes of Flowers. So matters stood until the cause reached this court on appeal, when appellant is met with a motion to strike out the stenographer's notes because not signed or approved by the trial judge, and, further, because no notice was ever given to the attorneys for appellee that the notes were on file in the clerk's office and subject to examination, and because the notes were not authenticated in any manner known to law.

Neither Flowers nor Whitfield file affiadvits in the case, but Mr. May does; the purport of the affidavit made by Mr. May being to the effect that the firm of May & Saunders participated in the trial of the case in the court below, though the record does not anywhere disclose this fact, and he further states that the dissolution of the firm and reorganization took place as formerly stated in this opinion, and that no notice was ever given, either to him or his firm, that the notes were on file in the clerk's office. He further states that he did not know the notes were on file, and never had an opportunity to examine them; but let it not be forgotten that the undisputed testimony in this record fails to show that there were any attorneys of record, other than the firm of May, Flowers & Whitfield, that were "interested in such case," other than the attorneys for appellants, and that no request was made by any person to have any other name or firm entered as attorneys of record, and no notice ever given to the clerk of any change of interest in any way in connection with this suit. Mr. May does not appear as counsel in the motion to strike out, though his name appears in the brief. This is emphasized, for the purpose of showing that the real attorneys interested in the cause were notified, if it could ever be held under these facts, for the purpose of this suit, in reference to the service of this notice, that Mr. May was not as much a member of the firm of May, Flowers & Whitfield at the

date the notes were delivered to Mr. Flowers as he was on the day the declaration was filed.

The opinion of the majority sustains the motion on these facts, and strikes out the stenographer's notes, thus destroying the appeal. When I read the opinion, I am a little uncertain as to just what ground this action of the court is based on, as it would seem to indicate that the motion is sustained both upon the ground that the clerk did not notify the attorneys "by mail or in person," and because the direct notice was not given to George W. May. I dismiss, as unbelievable, any idea that the majority holds, or would ever hold, that so far as any one connected with this case would be bound with the notice, if the clerk had literally followed the statute and served notice on Mr. Flowers "by mail or in person," that such person would not also be now bound with notice by the action of Mr. Flowers in dealing with these notes as he did. It is a conceded fact in the case that all the dealing had with the stenographer's notes by any one was with Mr. Flowers, and that neither Mr. May or Mr. Whitfield, so far as anything contrary appears in this case, had notice of any kind, unless notice to Mr. Flowers was notice to them. Now, was it? To hold otherwise is at variance with all other authority which I have been able to find, and dangerous to the safety of litigation. Shall the clerk be required to serve notice on an attorney not of record, even if he happened to have an interest in the litigation? When attorneys of record appear in a case, and subsequently become connected with other attorneys not appearing of record, shall this statute be so construed as to require the clerk to take official notice of the changes in firms, where the attorneys themselves do not take any action to make those changes appear of record, and make his failure to do this fatal to the right of appeal vested in litigants? If that is the law, haste should be made to wipe off the statute a law that deals so dangerously and equivocally with life, liberty, and property; for, if that is the statute, it applies as well in criminal as in civil cases.

But I say that is not the law, though my Brethren so unequivocally announce it to be. The "attorney or firm interested in such case," which the statute contemplates shall be served with notice, is the attorney or firm of record, and unless it appears of record in the case that there has been a change in the firm, it matters not what changes may take place outside. The firm of record continues a firm, in so far as the notice under the statute is required, and in so far as that case is concerned. The clerk has no power to make any changes in the record of attorneys, and he would violate the law if he did so. The publication of notice in the daily paper of the dissolution and reorganization of these partnerships had no sort of bearing on this case. The publication was intended for a wholly different purpose, and its object, under the law, is to accomplish a wholly different thing. If it be conceded that the clerk actually knew of this dissolution, it in no way affects the matter so far as he was concerned. No notice had been given to him that it created any change in the firm, so far as this pending suit was concerned, and no change was ever made in the attorneys of record.

In the case of *Whittle v. Renner*, 55 Cal. 395, a statute required that a notice of appeal be served on the adverse party or his attorneys, and the court held that the attorney meant by the statute was an attorney of record. The same thing is held in the case of *Wilson v. San Francisco Ry. Co.*, 108 Mo. 588, 18 S. W. 286, 32 Am. St. Rep. 624. If there are any cases holding to the contrary, my own industry, coupled with that of the counsel in the case and the other members of this tribunal, has failed to bring that case to light. I am justified in saying that there is no such case, for I have given this subject the most careful and painstaking examination, and such holding is so illogical and dangerous that I feel confident that, if any court ever made such a decision, it would long since have been receded from. I have carefully examined all the cases cited by counsel in favor of this motion, and here state, without recapitu-

lating the cases, that not one of them support this contention. This case stands alone in the jurisprudence of this state in the announcement of what I call a most dangerous doctrine, leaving the right of appeal to be defeated at any time that it may be claimed by a person that he was interested in the case, though there is nothing in the record to show that fact.

After the delivery of the foregoing opinions, the counsel who opposed the motion filed a suggestion of error, and the court set aside its judgment, and remanded the motion to the docket. Whereupon WHITFIELD, C. J., recused himself, and R. E. WILBOURN, Esq., a member of the supreme court bar was appointed and presided in his place.

WILBOURN, Special Judge, delivered the final and controlling opinion of the court.

The facts, so far as they relate to the motion to strike out the stenographer's notes, are as follows:

The declaration in the cause was filed on the 18th of July, 1908, on behalf of appellee against appellants, in the circuit court of Hinds county, state of Mississippi, by Messrs. May, Flowers & Whitfield, a firm of lawyers composed of Messrs. G. W. May, J. N. Flowers, and A. H. Whitfield, Jr. The name of said firm was signed to the declaration. No other attorney or firm of attorneys ever formally became attorneys of record in the cause for the appellee in the court below; and, while it appears from the affidavits in the case that the firm of May, Flowers & Whitfield was dissolved on January 1, 1909, and that two new firms, to wit, the firm of Flowers & Whitfield, composed of the said J. N. Flowers and A. H. Whitfield Jr., and the firm of May & Saunders, composed of the said G. W. May and J. S. Saunders, then came into existence, which facts were extensively advertised and generally known, it does not appear that the firm of May & Saunders ever became attorneys of record in the cause. The clerk of the court makes affidavit

"that so far as said record showed the firm of May & Saunders had no connection with said cause, and affiant was never notified that said firm did have any connection with the case," and further, that while he knew of the dissolution of the firm of May, Flowers & Whitfield, he was never advised that the dissolution affected the interests of said firm as attorneys in said cause, "or that any other firm was interested for the plaintiff than that of May, Flowers & Whitfield." The cause was tried in the court below, after the dissolution of the firm of May, Flowers & Whitfield, and at the March term, 1909, of the county circuit court. Mr. G. W. May makes affidavit that the firm of May & Saunders "actively participated" in the trial, and that he and both members of the firm of Flowers & Whitfield, were present throughout the proceedings in the court below, and that Mr. Saunders was "present at different times during said trial." Other than what may be inferred from the statement that the firm of May & Saunders actively participated in the trial in the court below, it does not appear how or in what way said firm was interested in the case; nor is it shown that, as a matter of fact, the dissolution of the firm of May, Flowers & Whitfield affected their relation to said cause and to the appellee as attorneys of record, nor that the firm of May & Saunders either participated in the trial of said cause, or were interested therein, by virtue of any employment of said firm by appellee or any one. For aught that appears of record, the fact that May & Saunders "actively participated," in the trial in the court below, may have been due solely to Mr. May's connection with the case, by virtue of the fact that he was bound by the contract of May, Flowers & Whitfield to represent appellee. The participation of May & Saunders in the trial was principally through Mr. May, and it is manifest that the three members of the firm of May, Flowers & Whitfield really tried the cause in the court below.

The March term, 1909, of the Hinds county circuit court adjourned April 17, 1909. The stenographer's transcribed notes

were filed with the clerk of the court, and so marked by him, on May 6, 1910. The official stenographer agreed with the clerk that he would notify the attorneys in the case, and, pursuant thereto, carried the original transcribed notes so marked "Filed" to the attorneys for the appellant, who straightway, on said date, to wit, May 6, 1909, examined and approved them. Thereupon, on said date, at the request of appellant's counsel, and pursuant to his understanding with the clerk, the official court stenographer delivered the said original filed notes, so marked and so approved by counsel for appellants, to Mr. J. N. Flowers. Mr. Flowers was concededly the leading counsel in charge of the conduct of the case for the appellee, and was a member of the firm of May, Flowers & Whitfield. It is not denied that counsel for appellants told said stenographer "to carry the original notes to the firm of May, Flowers & Whitfield and ask them to approve the same at the earliest possible moment, in order that the appeal might be completed." The stenographer makes oath that he did deliver the notes to Mr. J. N. Flowers on May 6, 1909, and did ask him if he would agree to the correctness of the same. Mr. Flowers said that he preferred to look over the notes, and, it appears, retained them until June 1, 1909, and did examine them, and then returned them to the office of the clerk by the hand of his stenographer, without indorsing his written approval thereon, and without consent or objection, and no written suggestion of corrections of said notes was filed at any time by appellee or his counsel. Mr. Flowers remarked to the stenographer that the notes were gotten up in good shape, and also said to counsel for appellants that they were correct, except, perhaps, for some typographical errors.

It is insisted that the notice of the filing of the notes, required by section 797 of the Code of 1906, must be given by the clerk, by mail or in person, and that the notice given under the direction of the clerk, by the official stenographer, who volunteered his services to the clerk for that purpose, is not sufficient,

and, further, that the notice required by the statute, by whomsoever given, was not sufficient, because not served on each attorney or firm interested in the case.   We cannot agree with either of these contentions.   We see no legal reason why notice of the filing of the notes may not be given to the attorneys personally, by a messenger or other person designated for that purpose by the clerk, so as to bind the parties to the suit.   It is the fact of notice, not the method of giving it, that is material. Furthermore, we think the attorneys interested in the case, who are to be notified under the statute, are the attorneys of record, and that, notwithstanding the dissolution of the firm of May, Flowers & Whitfield, they continued to be the only attorneys of record in said cause under the facts of this case, and that, in all matters pertaining to said cause, notice to one of them was notice to all.   There was, therefore, no failure to notify each firm of attorneys interested in the case, if these views be correct.

But, conceding that the notice required by the statute was not given, we are further of the opinion that the question of notice, or no notice, was rendered immaterial by the fact that after the transcribed notes were filed by the stenographer, and examined and approved by appellants the leading counsel for appellee retained the said notes for the purpose of examination for more than five days, did examine them, returned them to the clerk, and filed no written suggestions of correction of said notes. Clearly the object of the notice required by the statute is to afford the parties to the litigation an opportunity to inspect the notes and suggest corrections within the time allowed them, and to put them in default in the event they do not exercise the right to the use of the notes, for the purpose of inspection and correction, for the period prescribed by the statute.   If the appellee exercised, himself or through counsel, the right to use and inspect the notes for the period allowed by the appellee under the statute, and omits to file written suggestions of corrections, the question of notice becomes just as immaterial as is the question as to whether or not process was issued

and served in a suit where the defendant voluntarily appears. The acts of Mr. Flowers were binding upon his client, and we think, therefore, no matter whether the notice was legally sufficient or not, and irrespective of the question of notice, that the stenographer's notes became a part of the record by operation of law under the facts of this particular case, without either the signature of the judge or any agreement of counsel, and by the express provisions of the statute itself.

*The motion is therefore overruled.*

